IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


JAMES MESHACH LOMAX. #280316         *
              Plaintiff,
    v.                                       *  CIVIL ACTION NO. DKC-07-1438

DR. MAHLER                           *
DR. ISAIAS TESSEMA
NURSE ANTHONY                        *
             Defendants.
                        ***

**MEMORANDUM**

I.    <u>Background</u>

On May 31, 2007, this court received for filing a 42 U.S.C. § 1983 prisoner civil rights complaint seeking injunctive relief (examination by a specialist).[1]  Plaintiff, who remains at the North Branch Correctional Institution ("NBCI") since his March 11, 2007 transfer from the Maryland Correctional Adjustment Center ("MCAC"), claims that he has received unprofessional and inadequate medical care from two prison physicians for a condition involving redness to and bumps on his genitals.   Paper No. 1.  He states the doctors have provided different diagnoses and complains that Dr. Mahler[2] gave him a fungal cream to be used in the treatment of athlete's foot, jock itch, and ring worm, while Dr. Tessema informed him that the "bumps" were hereditary in nature. Plaintiff voices his concern that he has been misdiagnosed, has not seen a specialist as requested, and may have an infectious disease that is spreading. In July of 2007, Plaintiff was permitted to amend his action to name MCAC Nurse Anthony as a party Defendant for the alleged failure to schedule him to see a doctor for his genital condition.[3]  Paper Nos. 10 & 12.

---

[1]    Plaintiff seeks no specific damages but opines that "these doctors are liable for damages if they misdiagnosed me and as a result allowed my condition to worsen."  Paper No. 1 at Attachments.

[2]    According to the pleadings, Defendant Mahler is a Nurse Practitioner.  Paper No. 14.

[3]    Service of process has not been effected on Nurse Anthony.

II.    <u>Dispositive Filings</u>

On August 21, 2007, Defendants Mahler and Tessema filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  Paper No. 14.   Plaintiff has filed his Opposition. Paper No. 16.  The Motion may be determined on the pleadings without oral hearing.  *See* Local Rule 105.6. (D. Md. 2004).  For reasons to follow, Defendants Mahler and Tessema's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, is hereby  granted.

III.    <u>Standard of Review</u>

Summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete

failure of proof concerning an essential element...necessarily renders all other facts immaterial."

*Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden

of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit

or other similar evidence.  *See Anderson*, 477 U.S. at 256.

In *Celotex,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the
> burden of proof at trial on a dispositive issue, a summary judgment
> motion may properly be made in reliance solely on the "pleadings,
> depositions, answers to interrogatories, and admissions on file."
> Such a motion, whether or not accompanied by affidavits, will be
> "made and supported as provided in this rule," and Rule 56(e)
> therefore requires the nonmoving party to go beyond the pleadings
> and by her own affidavits, or by the "depositions, answers to
> interrogatories, and admissions on file," designate "specific facts
> showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact

issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North*

*Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D. N.C. 1966)).  There must be "sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S.

at 249-50 (citations omitted).

IV.   Analysis

As a inmate sentenced to confinement, Plaintiff is entitled to receive reasonable treatment

for his serious medical need.  A prisoner presenting a denial of medical care claim must prove two

essential elements.  First, he must satisfy the "objective" component by illustrating a serious medical

condition.[4]  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105

---

[4]    A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *See Mata v. Saiz*, 427 F.3d 745, 751 (5th Cir. 2005); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004).

(1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).  If this first element is satisfied, the prisoner must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

Based upon a review of the Complaint and the pleadings and materials presented by the parties, the court finds that Plaintiff has failed to satisfy either element for proving an Eighth Amendment deprivation.

Plaintiff was transferred from MCAC to NBCI on March 12, 2007.   He had no previous history of medical problems and was not taking any medications prior to transfer. Paper No. 14, Ex. A & Ex. C at 1-2.    On March 16 and March 20, 2007, Plaintiff submitted sick-call requests complaining of a rash on his genitals and a hernia on his left side.   *Id*., Exs. A & B; Ex. C at 3-4. Defendant Mahler evaluated Plaintiff on March 27, 2007, and affirms that to afford Plaintiff some privacy during this examination he had Plaintiff stand in the doorway of a storage area off the examination room.   *Id*., Ex. B.  Mahler claims that there was sufficient light for him to see the genital area that allegedly contained the rash and that  his evaluation revealed a normal examination of the genitals and inguinal area.   *Id*., Ex. B & Ex. C at 5   Plaintiff was advised to return to the clinic as needed.  *Id*., Exs. A & B.

On April 6, 2007, Mahler again evaluated Plaintiff for complaints of an itchy rash to his groin. *Id*., Exs. A & B; Ex. C at 6-7, & 12. Mahler noted a moist area around the head of Plaintiff's penis where it meets the foreskin. *Id*. Mahler assessed the condition as a fungal infection. *Id*. Plaintiff received one tube of tolnaftate cream, an anti-fungal cream used to treat a variety of infections, including athlete's foot, jock itch, and ringworm, and was advised to apply the cream to the affected area twice a day. Paper No. 14, Exs. A & B. On April 11, 2007, Plaintiff filed a sick-call form stating that the cream was aggravating his problem. On April 16, 2007, he was evaluated by Mahler, who indicated that Plaintiff's examination was normal. *Id*., Exs. A & B; Ex. C at 8-9. No evidence of infection was noted and Plaintiff was advised to discontinue the use of the tolnaftate cream and to return to the clinic as necessary. *Id*., Exs. A & B; Ex. C at 7.

On April 26, 2007, Dr. Tessema evaluated Plaintiff regarding his concerns that he had contracted a sexually transmitted disease ("STD"). *Id*., Ex. A. Tessema noted that in 1998, Plaintiff had been tested for HIV and twice tested for syphilis, all with negative results. *Id*., Ex. A & Ex. C at 10-11 & 20-22. Further, Plaintiff informed Tessema that he has not been sexually active since his incarceration and that he has no urethral discharge, pain, dysuria, or urine color change. *Id*. Tessema determined that follow-up blood tests were not medically indicated because Plaintiff denied any sexual activity and the physical examination revealed that Plaintiff had normal external male genitalia. *Id*. Plaintiff was reassured of the normal anatomical texture of the corona glandis area of his penis that he thought had abnormal lesions. *Id*. Tessema believed that Plaintiff was satisfied with the examination and the answers to his questions. *Id*. Plaintiff was advised to return to the clinic as needed.[5] *Id*.

---

[5] Plaintiff has alleged he suffers from a rash and "bumps" on his penis in his complaints to this court and in his sick-call encounter forms. On one occasion in April of 2007, he complained that his groin "itched"in a sick-call request. In his opposition he claims that he has experienced several of the signs and symptoms for herpes as set out by Defendant Mahler's Affidavit, *i.e.*, pain, redness, itching, and dry crusts, and cites to a July 2007 Washington Post article concerning the symptoms of herpes. Paper No. 16.

On May 1 and May 22, 2007, Plaintiff submitted sick-call forms complaining of a herpes infection and indicating that he was told by a prison physician that he had a hernia on his right side. *Id.*, Exs. A & B.  Mahler evaluated Plaintiff on May 25, 2007, and found the genital area to be normal.   Paper No. 14, Exs. A & B; Ex. C at 13-16.  Plaintiff did not exhibit any of the signs of herpes, *i.e.*, redness, itching, pain, swelling, blisters, sores, and/or dry crusts.  *Id.*, Exs. A & B; Ex. C at 13-16.   Plaintiff was referred to the prison psychiatrist for an evaluation.[6]   *Id.*, Exs. A & B; Ex. C at 13-16.   On July 5 and July 16, 2007, Plaintiff filed sick-call request forms complaining about his groin and asking to see a physician, not a nurse.  *Id.*, Ex. A & Ex. C at 17-19.  He refused to allow a nurse to examine him.[7]  He was advised that his examinations had been normal.  *Id.* Defendants Mahler and Tessema claim that Plaintiff did not file any sick-call requests from July 16, 2007, to the August 21, 2007 filing of Defendants' dispositive motion.  Plaintiff, however, states that he filed a sick-call request on August 13, 2007, and that Mahler indicated that blood work was not necessary because Plaintiff's genital area was normal.   Paper No. 16 at 4-5.

Plaintiff has failed to project evidence showing that he has a serious medical condition.   In April of 2007, Mahler diagnosed Plaintiff with a fungal infection and prescribed a topical cream. That observable condition resolved itself within six days.  Defendants otherwise found no objective signs of STD or any other genital problems.  Moreover, Plaintiff has not demonstrated that medical staff denied him constitutionally adequate medical care.  Plaintiff's sick-call encounter forms for his subjective complaints of penile "bumps" were not ignored; he was seen by medical personnel who found no objective abnormalities. Given these findings, Plaintiff's negative STD test results, and his

---

[6]     Defendants Mahler and Tessema claim that Plaintiff was seen by a prison psychiatrist on May 22, 2007, but do not provide the confidential mental health records to the court.  Paper No. 14, Mem. at 4, n. 2.

[7]     Plaintiff claims that the allegation that he refused to see Nurse Mahler is not true.  Paper No. 16 at 4.

undisputed affirmations that he has not been sexually active while confined, the court finds that no

Eighth Amendment violation.[8]

V.  Conclusion

For the aforementioned reasons, Defendants Mahler and Tessema's Motion  for Summary

Judgment, shall be granted.[9]   A separate Order follows.

Date:    September 24, 2007                                    /s/
                                                                       DEBORAH K. CHASANOW
                                                                       United States District Judge

---

[8]      Plaintiff has, at most, shown his disagreement with the diagnoses and treatment decisions of healthcare staff.  Plaintiff's dispute with Defendants' diagnoses and prescription recommendations does not amount to a constitutional violation.  *See Estelle*, 429 U.S. at 106; *Johnson*, 145 F.3d at 168; *Bowring v. Goodwin*, 551 F.2d 44, 48 (4th Cir. 1977).

[9]      In his Amended Complaint Plaintiff alleges that he was seen by Nurse Anthony in August of 2006, at MCAC for what he thought was a rash on his genitals and Nurse Anthony informed him there was no visible rash and to "keep showering" and clean his genitals.   Paper No. 10.  Plaintiff states that Nurse Anthony did not provide him requested medication "just in case" and did not call him back to the medical department as promised.  *Id*.  Given the factual basis for Plaintiff's allegations against Nurse Anthony, the medical record before the court, and Plaintiff's failure to show that the existence of a serious medical condition and injury, the claim against Nurse Anthony shall be dismissed.